[Cite as *State v. Savors*, 2010-Ohio-6084.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-CO-32 |
| | ) | |
| RANDY A. SAVORS, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Court of Common Pleas of Columbiana County, Ohio Case No. 08CR210

JUDGMENT: Affirmed

APPEARANCES:
For Plaintiff-Appellee

Robert Herron
Prosecuting Attorney
Timothy J. McNicol
Assistant Prosecuting Attorney
105 S. Market Street
Lisbon, Ohio 44432

For Defendant-Appellant

Attorney Douglas A. King
Hartford, Dickey & King Co., LPA
91 West Taggart Street, P.O. Box 85
East Palestine, Ohio 44413

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: December 13, 2010

DONOFRIO, J.

{¶1} Defendant-appellant, Randy A. Savors, appeals from a Columbiana County Common Pleas Court judgment convicting him of failure to notify the sheriff of a change of address, following a jury trial.

{¶2} In 1997, appellant pleaded guilty to a first-degree felony rape charge, and the trial court sentenced him to ten years in prison. Appellant was released on parole on March 3, 2007, and came under the supervision of Parole Officer John Granger. In addition to being on parole, as a Tier III offender, appellant was required to report in person to Sergeant Dan Bradley of the Columbiana County Sheriff's Department every 90 days to sign a "Notice of Registration Duties" form and to verify, among other things, his current address. Moreover, as a Tier III offender, whenever appellant plans to move, he is required to notify the Sheriff's Office at least 20 days in advance of changing his address. Offenders are required to report in person before they physically move, otherwise a warrant will be issued for their arrest.

{¶3} After his release from prison, appellant briefly lived with his father on Dyke Road. Then he moved to his grandmother's house at 49173 South Meadowbrook Circle. After that, appellant gained employment and moved into a residence at 7383 Depot Street. Up to this point, appellant had followed the moving procedure "perfectly," according to his parole officer.

{¶4} On May 22, 2008, during his 90-day registration meeting with Sgt. Bradley, appellant listed his address as 7383 Depot Street. Appellant also gave that same Depot Street address to Granger during their meeting on June 10, 2008.

{¶5} Appellant moved from the Depot Street property on June 22, 2008. From there, he moved back to his grandmother's house. Appellant failed to advise Granger or Sgt. Bradley that he intended to move.

{¶6} Meanwhile, on June 30, after appellant had already moved in with his grandmother on Meadowbrook Circle, Granger made an unannounced visit to appellant's registered Depot Street address. Granger noticed the outside of the house looked dramatically different. Finding no one home, Granger left his card with a note directing appellant to call him as soon as possible.

**{¶7}** Granger subsequently generated a whereabouts unknown report. Sgt. Bradley was also informed. On July 3, Sgt. Bradley signed a criminal complaint against appellant alleging that he had changed his address without notifying the Sheriff's Office. Sgt. Bradley's charge was file-stamped on July 8, 2008.

**{¶8}** On July 7, Granger arrested appellant at his grandmother's house and transported him to jail. The arrest was for an alleged parole violation stemming from appellant's failure to notify and not for the charge brought by Sgt. Bradley.

**{¶9}** Later on July 7, while appellant was at the Columbiana County Jail and before he was booked, Sgt. Bradley brought appellant to his office in order to update appellant's Tier III registration by getting the correct address. During that conversation, appellant informed Sgt. Bradley that he had moved, and he gave the new address of 49173 Meadowbrook Circle. Sgt. Bradley testified that appellant said he knew that he should have contacted the Sheriff's Office, but he just did not do it. Sgt. Bradley did not advise appellant of his *Miranda* rights prior to this conversation.

**{¶10}** A Columbiana County grand jury subsequently indicted appellant on one count of failure to notify, a first-degree felony in violation of R.C. 2950.05(A).

**{¶11}** Appellant filed a motion to suppress the statements he made to Sgt. Bradley prior to his arrest asserting they were inadmissible because Sgt. Bradley did not read him his *Miranda* rights. The court held a hearing on the motion and ultimately determined that appellant's constitutional rights were not violated and his statements were admissible.

**{¶12}** On September 29, 2009, the case proceeded to a jury trial. The jury found appellant guilty as charged. The trial court then sentenced appellant to seven years in prison, to be followed by five years of parole.

**{¶13}** Appellant filed a timely notice of appeal on October 5, 2009. He now raises three assignments of error, the first of which states:

**{¶14}** "THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT HIS CONSTITUTIONAL RIGHT TO ANSWER ONLY TO AN INDICTMENT FOR A CRIME BY A DULY CONSTITUTED GRAND JURY WHEN IT ALLOWED THE

STATE TO AMEND THE FATALLY DEFECTIVE INDICTMENT THE DAY OF THE TRIAL."

{¶15} The original indictment in this case charged appellant with a violation of R.C.2950.05(A), failure to notify the sheriff of a change of address. The indictment contained no mens rea element. On the day of trial, over appellant's objection, the trial court allowed the State to amend the indictment to add the mens rea of "recklessly."

{¶16} Appellant argues the trial court violated his rights under the Ohio Constitution when it allowed the State to amend his indictment on the day of the trial. Appellant emphasizes that an indictment must contain the elements of the offense charged and fairly inform the defendant of the charge against which he must defend.

{¶17} This matter was recently addressed in *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830. The Ohio Supreme Court held:

{¶18} "An indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state. ( *State v. Buehner,* 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, reaffirmed; *State v. Colon,* 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, overruled; *State v. Colon,* 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, overruled in part.) Id. at paragraph one of the syllabus.

{¶19} The statute at issue, R.C. 2950.05(A), does not contain a culpable mental state: "If an offender *** is required to register pursuant to [statute] *** the offender *** shall provide notice of any change of residence *** to the sheriff with whom the offender *** most recently registered the address ***. [T}he offender *** shall provide the written notice at least twenty days prior to changing the address of the residence ***." Therefore, pursuant to *Horner*, the indictment was not defective for failing to include a mens rea element. As such, even if the court had not allowed the state to amend the indictment, the indictment would not have been defective. Furthermore, failure to register is a strict liability offense. See *State v. Blanton*, 184

Ohio App.3d 611, 2009-Ohio-5334, at ¶26; *State v. Robinson*, 6th Dist. No. E-07-020, 2009-Ohio-2921, at ¶17; *State v. Beasley* (Sept. 27, 2001), 8th Dist No. 77761. Therefore, by amending the indictment to include the "recklessly" mens rea, the state's burden of proof was actually raised. Thus, any error would have been to appellant's benefit.

**{¶20}** Accordingly, appellant's first assignment of is without merit.

**{¶21}** Appellant's second assignment of error states:

**{¶22}** "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS."

**{¶23}** Appellant argues that Sgt. Bradley subjected him to a custodial interrogation in violation of his due process rights because he did not receive *Miranda* warnings prior to being asked for his registration information. Considering appellant was in custody at the time and considering Sgt. Bradley had already signed a criminal complaint against appellant for failing to update his address, appellant characterizes Sgt. Bradley's attempt to update appellant's registered address as a custodial interrogation. According to appellant, Sgt. Bradley's testimony about appellant's statement was the crux of the state's evidence. Furthermore, appellant argues that seeking to update the registered address of a sex offender who has been arrested and against whom the charge of failure to notify the sheriff of a change of address has already been signed is not the same as a booking officer asking a criminal defendant for an address. Appellant argues that the address is the crime.

**{¶24}** Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608. Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham* (1994), 96 Ohio App.3d 649, 653. An appellate court accepts the trial court's factual findings and relies upon

the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice* (1998), 129 Ohio App.3d 91, 94. A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. Id.

**{¶25}** The trial court made the following findings of fact. Appellant is a Tier III sex offender who is required to register with the sheriff every 90 days. At the Columbiana County Sheriff's Office, where appellant is registered, Sgt. Bradley is in charge of registrations. In June 2008, Sgt. Bradley learned from appellant's parole officer that appellant was no longer at his registered address. Sgt. Bradley then initiated felony charges against appellant. On July 7, 2008, appellant was arrested and brought to the county jail. Either on the day of his arrest or the day after, Sgt. Bradley brought appellant to his office so that appellant could register his new address. Sgt. Bradley then went through his standard registration procedure by giving appellant a form to fill out and asking appellant his new address. Appellant gave Sgt. Bradley his new address. Appellant then told Sgt. Bradley that he knew he should have told him before that he was moving and that he knew he broke the law.

**{¶26}** The evidence supports the court's factual findings. Sgt. Bradley was the only witness to testify and his testimony mirrors the court's findings. In fact, appellant does not take issue with the court's factual findings on appeal. He only takes issue with the legal conclusions.

**{¶27}** The trial court found that although appellant was in custody at the time, this was not a custodial interrogation because there was no interrogation. It determined that Sgt. Bradley was not trying to elicit information from appellant concerning his involvement in a crime. Instead, Sgt. Bradley was performing the ministerial duty of registering appellant. The court further found that appellant's statements were voluntary and that there was no questioning by Sgt. Bradley seeking information about whether appellant had moved before he was supposed to or

without registering or whether he knew he had violated the law. Consequently, the court found appellant's statement was admissible.

**{¶28}** This court must consider whether the appropriate legal standard was applied to the suppression issue. All defendants are entitled to be notified of certain rights prior to a custodial interrogation, and without those warnings, statements made in a custodial interrogation are inadmissible. *Miranda v. Arizona* (1966), 384 U.S. 436. Accordingly, if appellant was subjected to a custodial interrogation without being given his *Miranda* warnings, his statements were inadmissible.

**{¶29}** Having been arrested on a parole violation and transported to the jail, appellant was clearly in custody. The issue then becomes whether Sgt. Bradley's act of updating appellant's Tier III registration qualifies as an interrogation under *Miranda*.

**{¶30}** The Supreme Court has ruled that an interrogation involves "words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Emphasis sic.) *Rhode Island v. Innis* (1980), 446 U.S. 291, 302. "Incriminating" refers to any response, whether inculpatory or exculpatory, that the prosecution may seek to introduce at trial. Id. at 301, fn. 5.

**{¶31}** On review, Sgt. Bradley had previously filed the "failure to notify" charge against appellant. (Supp. Tr. 7). Therefore, he had reason to know that the registration questions were reasonably likely to elicit an incriminating response from appellant. That appellant's response was incriminating is later confirmed by the fact that the prosecutor used that testimony at trial. (Trial Tr. 158). Registering a new address was tantamount to appellant admitting that he had moved without notifying the sheriff. As appellant asserts, his address was the crime.

**{¶32}** Moreover, appellant's statement that he knew he should have notified the sheriff but did not, although found by the trial court to be voluntarily given, was elicited by the registration process. But for the registration process, appellant would not have made that statement.

**{¶33}** The trial court determined that appellant's registration fell within the "booking exception" because Sgt. Bradley had the administrative duty to register appellant's address. The Supreme Court has recognized a "booking exception" for questions designed to secure biographical information necessary to complete booking or pretrial procedures. *Pennsylvania v. Muniz* (1990), 496 U.S. 582, 601. Nevertheless, the booking exception is a narrow one. The Supreme Court noted that the booking exception does not mean police may ask questions that are designed to elicit incriminatory admissions. Id. at 602, fn. 14. Despite the fact that Sgt. Bradley may not have been trying to obtain information from appellant concerning his involvement in the failure to notify crime, Sgt. Bradley still had reason to know that the process of registering appellant would elicit an incriminatory admission. Therefore, under these facts, the questions as to appellant's address do qualify as an interrogation under *Miranda*. Consequently, the trial court should have suppressed appellant's statements to Sgt. Bradley.

**{¶34}** But this error was harmless. For a constitutional error to be held harmless, the court must find that it was harmless beyond a reasonable doubt. *State v. Williams* (1980), 6 Ohio St.2d 281, at paragraph three of the syllabus; *Chapman v. California* (1967), 386 U.S. 18, 24.

**{¶35}** Even without the evidence appellant sought to suppress, the state still established appellant's guilt beyond a reasonable doubt. R.C. 2950.05(A) provides that a Tier III offender must provide written notice to the sheriff at least 20 days prior to changing his residential address.

**{¶36}** State's Exhibit One is an offender information-form, "Notice of Registration Duties of Sexually Oriented Offenders Or Child-Victim Offender" which appellant signed on May 22, 2008. According to paragraph three of that form, "At least 20 days prior to changing your residence address * * * you are required to * * * provide written notice of the residence * * * to the sheriff with whom you most recently registered the address." (State's Ex. 1). By signing the form, appellant acknowledged

that the requirement had been explained to him and that he understood that he must abide by all of the provisions of R.C. 2950.05.

{¶37} Sgt. Bradley testified that on May 22, 2008, appellant registered his residence as 7383 Depot Street. (Trial Tr. 153; State's Ex. 1). Appellant himself testified that he moved from the Depot Street address on June 22, 2008, to his grandmother's residence. (Trial Tr. 189-91). Appellant then testified that he did not inform Sgt. Bradley of his move until June 30, 2008. (Trial Tr. 191-92). Based on these facts, by his own testimony, appellant clearly disregarded his duty when he failed to notify the sheriff prior to moving and in writing and, therefore, he violated R.C. 2950.05(A). These facts established appellant's guilt beyond a reasonable doubt.

{¶38} Accordingly, appellant's second assignment of error is without merit.

{¶39} Appellant's third assignment of error states:

{¶40} "DEFENDANT/APPELLANT'S CONVICTION MUST BE REVERSED AND A NEW TRIAL ORDERED DUE TO PROSECUTORIAL MISCONDUCT AND/OR IMPROPER COMMENTS BY THE TRIAL COURT JUDGE."

{¶41} Appellant's arguments for this assignment of error fall into four categories. The first three assert prosecutorial misconduct.

{¶42} The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. *State v. Fears* (1999), 86 Ohio St.3d 329, 332. In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected the appellant's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14. "[T]he touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Hanna,* 95 Ohio St.3d 285, 2002-Ohio-2221, at ¶ 61, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219. An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-

2128, at ¶ 121. A failure to object to alleged prosecutorial misconduct generally waives all but plain error. *Hanna* at ¶ 77; *LaMar* at ¶ 126.

**{¶43}** Parties are generally afforded wide latitude in closing arguments. *State v. Spivey* (Jan. 13, 1997), 7th Dist. No. 89-CA-172; *State v. Smith* (1984), 14 Ohio St.3d 13, 14. When reviewing whether a prosecutor's remarks during closing arguments were prejudicial, we must view the closing argument in its entirety *State v. Treesh* (2001), 90 Ohio St.3d 460, 466; *State v. Moritz* (1980), 63 Ohio St.2d 150, 157.

**{¶44}** Appellant failed to object to any of the comments that he now takes issue with. Therefore, a plain error review applies here. Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long* (1978), 53 Ohio St.2d 91, 97.

**{¶45}** Appellant first argues that a select number of statements made by the prosecutor during closing argument qualify as prosecutorial misconduct. Appellant cites the prosecutor's statement that "[An affirmative defense] kind of is a loop hole or an out for the defendant." (Trial Tr. 244). Appellant also cites when the prosecutor asked, "Who's snowing who?" (Trial Tr. 235). Thirdly, appellant cites to the prosecutor's reference to appellant changing his testimony and said, "Come on. Come on. See through the smoke. Keep your eye on the ball here folks." (Trial Tr. 243). According to appellant, these statements implied to the jury that his evidence was somehow concocted and unworthy of consideration or belief.

**{¶46}** On review of the transcript, these comments were not improper. In context, the "loop hole" remark, although not very artful, attempted to describe what affirmative defenses are in general and did not specifically address appellant's defense. (Trial Tr. 244). And in reference to appellant changing his testimony, the "See through the smoke" remark by the prosecutor was fair because it stopped short of calling appellant a liar. (Trial Tr. 243). Lastly, given the context of appellant accusing the deputy of lying, the "who's snowing who?" comment also was fair. (Trial Tr. 235).

**{¶47}** For appellant's second category of alleged prosecutorial misconduct, he refers to the prosecutor's repeated references to appellant as a "convicted rapist/sex offender/sexual predator." (Trial Tr. 47, 109, 110, 112, 114, 152, 153, 154, 159, 201, 202, 209, 231, 233, 234, 243, 245). Appellant argues that although these statements are true, the prosecutor improperly repeated such statements for purposes other than establishing appellant's registration requirements.

**{¶48}** Appellant was properly characterized as a convicted sex offender in a failure to notify case. Because appellant is a convicted sex offender, the comments, while perhaps excessively repetitive, were not improper, and appellant was not unfairly prejudiced.

**{¶49}** For his third category, appellant points to the prosecutor's comment during closing arguments about appellant failing to call his grandmother or any other family member to corroborate his story. (Trial Tr. 242).

**{¶50}** This comment was not improper given that appellant put on testimony about moving to his grandmother's house and placing calls from her house to Sgt. Bradley to notify him of appellant's change in address.

**{¶51}** In addition to appellant's three main categories of alleged prosecutorial misconduct, appellant argues that the prosecutor's comments regarding his failure to notify the Adult Parole Authority of his change of address, even though appellant was not charged with that conduct, was prosecutorial misconduct. (Trial Tr. 202, 213, 233). Appellant also argues that the prosecutor's speculative comment that appellant's family expected to find him in jail was misconduct as well. (Trial Tr. 209, 246).

**{¶52}** Regarding the prosecutor's comments about appellant's failure to notify the Adult Parole Authority of his change of address, that comment was relevant as to whether appellant had been keeping up to date on any of his registrations, and thus was appropriate. And regarding the prosecutor's comments about appellant's family expecting to find him in jail, such comments were not speculation given the fact that appellant testified his family called to see if he was in jail. (Trial Tr. 196).

{¶53} Appellant's final allegations of prejudice involve the trial court judge. Appellant argues he was substantially prejudiced when the judge stated that appellant's underlying rape conviction involved a young girl. (Trial Tr. 87). Appellant also points to the judge's jury instruction that included a reference to his prison term. (Trial Tr. 250).

{¶54} Firstly, it was a juror during voir dire, not the judge, who made the comment about the offense involving a young girl. (Trial Tr. 87). Appellant later used a peremptory challenge to remove her from the jury. (Trial Tr. 93). Secondly, an element of appellant's offense required proof of a past conviction. Thus, appellant's argument that the trial court's instruction was improper is without merit.

{¶55} Based on the foregoing, appellant's third assignment of error is without merit.

{¶56} For the reasons stated above, appellant's conviction is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.